```
                   UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| Paul Lancaster, | 1:20-cv-01995-NLH-MJS |
| Plaintiff, | OPINION |
| v. | |
| Jennifer Piccoli, Chuck Hellyer, Andre Coleman, Alexis Allen, and Kevin O'Neill, | |
| Defendants. | |

Appearances:

PAUL LANCASTER
1 MARKET ST.
APT. 660
CAMDEN, N.J. 08102

　　*Plaintiff Appearing Pro Se*

AZEEM M. CHAUDRY
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
25 MARKET ST.
P.O. BOX 112
TRENTON, N.J. 08625

　　*On behalf of Defendant Kevin O'Neill*

**HILLMAN**, District Judge

　　Pending before the Court is Defendant Kevin O'Neill's motion to dismiss the amended complaint of Plaintiff Paul Lancaster ("Plaintiff"). (ECF 54). For the reasons expressed below, the motion will be granted.

**I.   Background**

Plaintiff was a ten-year employee of New Jersey Transit Corporation ("N.J. Transit").  (ECF 44 at ¶ 1).  Defendant O'Neill[1] is an Employee Assistance Program Counselor for N.J. Transit.  (Id. at ¶ 9).  Co-Defendants Jennifer Piccoli and Chuck Hellyer are managers at N.J. Transit, (id. at ¶¶ 6-7), while Co-Defendants Andre Coleman and Alexis Allen are a regional supervisor and bus operator, respectively, (id. at ¶¶ 8, 10).

Plaintiff filed this action in forma pauperis ("IFP") in the United States District Court for the Eastern District of Pennsylvania on January 8, 2020 claiming deprivation of his constitutional rights by N.J. Transit and numerous individual defendants pursuant to 42 U.S.C. § 1983.  (ECF 1; ECF 2).  The case was transferred to this District on January 22, 2020, (ECF 5), and this Court later granted Plaintiff's IFP application and directed the United States Marshal to effectuate service as instructed by Plaintiff, (ECF 7).  Summonses issued for attempted service at N.J. Transit locations in Newark, Maplewood, and Camden were returned executed as to N.J. Transit and unexecuted as to individual defendants.  (ECF 14).

---

[1] The Court adopts the spelling of O'Neill's name used in his supporting brief, (ECF 54-1), and has adjusted the case caption accordingly.

N.J. Transit moved to dismiss, (ECF 16), and Plaintiff moved for summary and default judgment, (ECF 28; ECF 35). Service was effectuated on O'Neill on February 24, 2021, (ECF 31), and O'Neill moved for dismissal on May 27, 2021, (ECF 36).

In a consolidated opinion, the Court concluded that N.J. Transit was entitled to sovereign immunity and thus granted its motion to dismiss with prejudice and denied Plaintiff's motion for summary judgment as to N.J. Transit. (ECF 42 at 13-14). The Court similarly held that O'Neill was entitled to immunity – having interpreted that he was sued in his official capacity, granted O'Neill's motion to dismiss, denied Plaintiff's summary judgment motion, and permitted Plaintiff to file an amended complaint. (Id. at 14-15).

The Court also denied Plaintiff's motion for entry of default judgment for failure to first obtain entry of default, (id. at 16), and raised general concerns regarding Plaintiff's failure to successfully effectuate service on the remaining individual defendants, (id.). Accordingly, the Court ordered that Plaintiff show cause why his claims against the unserved individual defendants should not be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 4(m). (Id. at 16-17; ECF 43 at 2).

In response, Plaintiff filed the instant one-count amended complaint, again alleging violation of his rights under 42

U.S.C. § 1983 based on discrimination and unequal treatment that he experienced during his employment.  (ECF 44 at ¶¶ 26-28).[2]

Plaintiff's amended complaint alleges that he was wrongfully accused of assaulting and verbally abusing a friend and coworker and that Hellyer committed perjury by stating that the coworker was afraid of Plaintiff and withheld reports in an effort to have an arbitrator rule against Plaintiff.  (Id. at ¶¶ 15-16).[3]  Plaintiff also claims that he was harassed in January 2019 by having a spotter placed on his bus as a disciplinary tactic for allegedly speaking excessively to passengers and was tested for drugs and alcohol following an October 23, 2018 incident in which he was inadvertently pushed.  (Id. at ¶¶ 17, 20).  Plaintiff asserts that other employees have not been tested following similar incidents.  (Id. at ¶ 20)

Additional instances of unequal treatment include a January 6, 2019 incident in which Plaintiff claims that he was sexually

---

[2] As stated in the Court's November 3, 2022 opinion and order, multiple defendants named in the original complaint are not named in the amended complaint and the Court interprets their omission as Plaintiff abandoning his claims against them.  (ECF 48 at 2).

[3] Plaintiff's amended complaint includes as an exhibit an April 18, 2017 arbitration decision detailing allegations that Plaintiff shouted at another employee, followed her onto her bus, and hugged her – which Plaintiff disputed – leading to his termination.  (ECF 44 at 25-30).  The grievance was ultimately sustained in part, with Plaintiff returning to work without backpay under the condition that he undergo sensitivity and training and anger management.  (Id. at 47).

assaulted by Allen by her placing her hands on his shoulders, resulting in discipline inconsistent with how he was treated following his alleged assault of a coworker. (Id. at ¶ 18).[4] Plaintiff further alleges that on October 9, 2017, Coleman – who was involved in Plaintiff's temporary termination following the alleged assault incident – made an inappropriate comment regarding women which resulted merely in Coleman promising not to speak like that in Plaintiff's presence. (Id. at ¶ 21).

Specific to O'Neill, Plaintiff alleges that he requested and was initially provided reasonable accommodations for his unspecified disability as part of the conditions of his employment. (Id. at ¶ 14). Plaintiff was ordered to seek anger-management and sensitivity courses as part of his return to employment in April 2017 and was also ordered to meet with O'Neill. (Id. at ¶ 19). Plaintiff was taken out of service on February 6, 2019, ordered again to meet with O'Neill, agreed to take medication to manage his stress and anxiety, and worked with O'Neill to manage his stress and anxiety. (Id.).

---

[4] Exhibit C accompanying Plaintiff's amended complaint is a determination letter from the director of N.J. Transit's Office of Equal Opportunity & Affirmative Action dated May 17, 2019, stating that video evidence contradicted Plaintiff's allegation that Allen rubbed Plaintiff's chest, stomach, and pelvic region "sexually" but confirmed that Plaintiff's back and shoulders were rubbed or patted without consent in violation of N.J. Transit policy. (ECF 44 at 56-57). Plaintiff challenged this determination in subsequent letters. (Id. at 59-64, 71-76).

Plaintiff alleges that he told O'Neill in August 2019 that he was not feeling well and not yet ready to return to work, but that O'Neill stated that – once cleared – Plaintiff would participate in a "medical ride" and return to work.  (Id.). Plaintiff claims that he was terminated on August 29, 2019 while in the process of returning to work and was later hospitalized as a result of stress and anxiety caused by Defendants and that he continues to suffer from related health conditions.  (Id.).

The amended complaint seeks declaratory judgment striking N.J. Transit's allegedly unlawful practices, an order compelling Defendants to comply with the law and restore Plaintiff to his position, and compensatory and punitive damages.  (Id. at p. 20).

Plaintiff moved for partial summary judgment against O'Neill on March 7, 2022.  (ECF 46).  The Court denied Plaintiff's motion without prejudice in a November 3, 2022 opinion and order and ordered O'Neill to respond to the amended complaint within fourteen days.  (ECF 48 at 3).  O'Neill filed the pending motion to dismiss on November 17, 2022, (ECF 54), to which Plaintiff filed a timely opposition, (ECF 55).

**II. Discussion**

  **A. Jurisdiction**

The Court possesses original jurisdiction over this action as Plaintiff claims deprivation of rights under 42 U.S.C. §

1983.  See 28 U.S.C. § 1331.

   **B. Motion to Dismiss**

Pursuant to the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted prior to the filing of a responsive pleading.  See Fed R. Civ. P. 12(b)(6).[5]  "To survive a motion to dismiss, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Doe v. Princeton Univ., 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and – accepting the plaintiff's factual assertions, but not legal conclusions, as true – "'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" id. at 342 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) and Ashcroft v. Iqbal, 556

---

[5] Plaintiff's opposition contends that O'Neill has failed to comply with the Court's November 3, 2022 order to answer the amended complaint and, further, that Hellyer – not O'Neill – filed the pending motion to dismiss.  (ECF 55 at ¶¶ 22, 25-26).  This is a red herring.  Plaintiff's understanding that Hellyer filed the motion to dismiss appears to be premised on a clerical error made by the Clerk of Court when it docketed O'Neill's motion to dismiss incorrectly as made by Hellyer.  (ECF 54; ECF 55-2 at 20).  However, the substance of the motion, brief, and proposed order make clear that the motion was made on behalf of O'Neill.  (ECF 54).  Most importantly, Plaintiff understood it as such.  (ECF 55).  The Clerk will be directed to correct the docketing error.  Further, the Court clarifies for Plaintiff that the Federal Rules of Civil Procedure permit the filing of a motion to dismiss prior to the filing of a responsive pleading.  See Fed. R. Civ. P. 12(b).

U.S. 662, 678 (2009)).

The sufficiency of a complaint is determined by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

**III. Analysis**

**A. O'Neill's Motion to Dismiss**

At the outset, the Court recognizes O'Neill's argument that the amended complaint does little to address the Court's prior conclusion that he is immune from Plaintiff's claim against him. (ECF 54-1 at 7 (citing ECF 42 at 14-15)). As articulated by the Supreme Court and recognized within this District, state actors within their official capacities are not "persons" who may be sued under 42 U.S.C. § 1983. See Smith v. New Jersey, 908 F. Supp. 2d 560, 563-64 (D.N.J. Nov. 7, 2012) (discussing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). "[A]n employee of the State named as a defendant in a civil rights action may be held liable for damages only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity," however, "a state official in his or her official capacity, when sued for injunctive relief, would be a

8

person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" GJJM Enters., LLC v. City of Atl. City, 293 F. Supp. 3d 509, 515-16 (D.N.J. Dec. 21, 2017) (quoting Will, 491 U.S. at 71 n.10).

Complaints will often fail to specify whether officials are being sued in their official or personal capacities or both and "'[t]he course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (quoting Brandon v. Holt, 469 U.S. 464, 469 (1985)). Courts within the Third Circuit searching for such indication look to whether the plaintiff seeks to recover damages only from the official and not the state itself, if qualified immunity is raised as a defense, and whether punitive damages – only available as to officials in their individual capacities – are sought. See Lawton v. N.J. Dep't of Cmty. Affs., No. 15-8526, 2016 WL 5012321, at *3 (D.N.J. Sept. 16, 2016) (citing Melo v. Hafer, 912 F.2d 628, 636 (3d Cir. 1990) and Gregory v. Chehi, 843 F.2d 111, 119-20 (3d Cir. 1988)). Continued reference to individuals' official titles in a complaint and failure to rebut a defendant's Eleventh-Amendment argument may also provide persuasive indication. See Pena v. Div. of Child & Fam. Servs., No. 08-1168, 2010 WL 3982321, at *5 (D.N.J. Oct. 8, 2010).

The Court finds that there is, at best, ambiguity as to whether Plaintiff has sued O'Neill in his official capacity. On one hand, the amended complaint sues only individuals and seeks punitive damages. On the other, O'Neill is referred to with his official title in the amended complaint and Plaintiff fails to substantively rebut O'Neill's immunity argument in his opposition. Even if the Court were to conclude that O'Neill has been sued in his personal capacity, or to the extent that the amended complaint can be interpreted as seeking injunctive relief from O'Neill, see Torrey v. New Jersey, No. 13-1192, 2014 WL 941308, at *7 (D.N.J. Mar. 11, 2014) ("The Third Circuit has found that such a request for reinstatement of employment 'is the type of injunctive, "forward-looking" relief cognizable under Ex Parte Young.'" (quoting Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002))), the Court finds addition fatal flaws that necessitate dismissal.

First, the Court agrees with O'Neill's reading that the substantive allegations in the amended complaint focus on Plaintiff's right to a reasonable accommodation for his disability and that he was improperly terminated while seeking treatment, (ECF 44 at ¶ 19), reflective of a claim under the Americans with Disabilities Act ("ADA"). Plaintiff only bolsters this contention in his opposition, asserting that "there is no dispute that Plaintiff had a disability or that

10

Defendant ultimately terminated his employment unlawfully on the basis of this disability without any justification or cause other than to retaliate against Plaintiff based on the circumstances alleged in the Complaint." (ECF 55 at ¶ 34). Plaintiff's opposition expressly references the ADA, repeats his allegations of improper termination due to his disability, and cites legal standards applicable to the New Jersey Law Against Discrimination ("NJLAD"). (Id. at ¶¶ 12-13, 17-19, 23, 34, 37-39).

However, "ADA statutory rights cannot be vindicated through § 1983," Williams v. Pa. Hum. Rels. Comm'n, 870 F.3d 294, 300 (3d Cir. 2017), and "state law rights are not enforceable under § 1983," Martin v. Unknown U.S. Marshals, 965 F. Supp. 2d 502, 544 n.27 (D.N.J. Aug. 15, 2013) (collecting cases). Further, to the extent that Plaintiff wishes to assert claims under the ADA or NJLAD, he may not do so now as the complaint asserts its lone count under § 1983 and "it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" See Olson v. Ako, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)).

Finally, even if the Court were to look past these shortcoming and ambiguities – and it does not – it would be left with little with which to premise liability. The amended

11

complaint states that Plaintiff was ordered to seek treatment from O'Neill and that he complied with O'Neill's instructions. (ECF 44 at ¶ 19). Plaintiff allegedly informed O'Neill in August 2019 that he was not ready to return to work, to which O'Neill responded that – once cleared – Plaintiff would be scheduled for a medical ride and return to work. (Id.). Plaintiff was terminated "while still under medical," (id.), but the amended complaint provides little detail as to the circumstances of his termination and no clear indication whether or how O'Neill was involved in the termination. Plaintiff's opposition provides little clarity – alleging that O'Neill "allowed the Plaintiff to be terminated while being treated medically for his disability." (ECF 55 at ¶ 23).

The Court thus cannot conclude that Plaintiff has provided the short and plain statement showing entitlement to relief required by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8(a)(2); see also Abbott v. Verizon Commc'ns, No. 11-0421, 2012 WL 1033415, at *3 (D.N.J. Mar. 27, 2012) (granting dismissal due to the plaintiff's failure to provide details of her termination, alleged discrimination, and related employer actions). The Court will therefore grant O'Neill's motion to dismiss.

### B. Plaintiff's Failure to Serve Other Individual Defendants

In its September 29, 2021 opinion and order, the Court provided Plaintiff thirty days to show cause why his claims against other individuals should not be dismissed for failure to effectuate service. (ECF 42 at 16; ECF 43 at 2). O'Neill's supporting brief asserts that Plaintiff's belated certificates of service fail to explain why individual Defendants were not timely served. (ECF 54-1 at 5, 5 n.2). The Court agrees.

The Federal Rules of Civil Procedure permit effectuation of service by delivering a copy of the summons and complaint to the individual personally, leaving copies at the individual's dwelling or usual place of abode with an individual of suitable age and discretion, delivering copies to an agent authorized by appointment or law to receive service, or by following the state service laws of the state in which the district court is located or service is made. Fed. R. Civ. P. 4(e). The New Jersey Rules of Court similarly provide that service may be made by personally delivering a copy of the summons and complaint, leaving copies at the individual's dwelling or usual place of abode with a competent member of the household over the age of fourteen, or by delivering copies to a person authorized by appointment or law to receive service. N.J. Ct. R. 4:4-4(a)(1). Service may be made by mail to the individual's usual place of

13

abode or to a person authorized by law to accept service or – with instructions to only deliver to the addressee – to the individual's place of business or employment only "[i]f personal service cannot be effected after a reasonable and good faith attempt, which shall be described with specificity . . . ." N.J. Ct. R. 4:4-3(a); see also Mercado v. Toyota Fin. Servs., Inc., No. 21-13631, 2022 WL 1078227, at *1 (D.N.J. Mar. 16, 2022) ("New Jersey law does not authorize service by certified mail unless Plaintiff was unable to effectuate personal service.").

A court must dismiss an action without prejudice if service is not effectuated within ninety days of filing or order that service be made within a specific time, "[b]ut if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m); see also Davis v. Samuels, 962 F.3d 105, 116 (3d Cir. 2020) (explaining that extensions pursuant to Rule 4(m) are a two-step process where a court must first determine whether good cause exists for failure to timely serve a defendant and, if so, grant an extension and, if not, consider whether a discretionary extension should be granted).

Here, Plaintiff filed four certificates of service on the docket on November 7, 2022 claiming that Allen, Coleman, and Hellyer were each served by first-class mail on October 29, 2021

14

at a N.J. Transit location in Camden while Piccoli was similarly served by first-class mail sent to N.J. Transit headquarters in Newark.  (ECF 49; ECF 50; ECF 51; ECF 52).  The Court interprets these certificates as Plaintiff's attempts to serve Defendants by mail at their places of work.  These certificates do nothing to demonstrate good cause for the significant delay in service and do not themselves represent valid service as Plaintiff has not described reasonable and good faith attempts to personally serve Defendants and it is unclear based on the certificates or their attachments whether attempted mail service included "postal instructions to deliver to addressee only."  See N.J. Ct. R. 4:4-3(a).

Plaintiff's opposition further expresses confusion as to the status of Hellyer, claiming that he was served in March 2020 and September 2020, and adds that all Defendants were served the amended complaint by certified mail and "Plaintiff next waits for the direction of the court."  (ECF 55 at ¶¶ 21-22).  The opposition includes as an exhibit a return-of-service form stating that service for Hellyer was refused by the legal department at N.J. Transit headquarters.  (ECF 55-2 at 19).

The Court finds here that Plaintiff fails to demonstrate proper service on Hellyer, see Snyder v. Swanson, 371 F. App'x 285, 287 (3d Cir. 2010) (affirming dismissal where the plaintiff failed to appropriately attempt service following a letter from

15

an attorney refusing to accept service on behalf of a defendant), and again does not provide good cause for Plaintiff's failure to timely serve Defendants.  The Court is cognizant that Plaintiff is proceeding pro se and provided him an opportunity to show cause in its earlier opinion in recognition of that fact.  However, "[l]itigants, whether represented by counsel or not, are expected to comply with the Federal Rules of Civil Procedure when they file in federal court.  Mere ignorance of the rules does 'not provide good cause to excuse [a party's] failure to serve the defendants within the time allotted under the rules.'"  Itiowe v. Fed. Commc'ns Comm'n, No. 13-2865, 2014 WL 2168252, at *2 n.1 (D.N.J. May 23, 2014) (second alteration in original) (quoting Sykes v. Blockbuster Video, 205 F. App'x 961, 963 (3d Cir. 2006)).  The Court will therefore dismiss Piccoli, Allen, Coleman, and Hellyer from this action.

### IV. Conclusion

For the reasons stated above, O'Neill's motion to dismiss, (ECF 54), is granted and O'Neill, Piccoli, Allen, Coleman, and Hellyer shall be dismissed from this action without prejudice.

An Order consistent with this Opinion will be entered.

Date:  June 9, 2023          s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.